893 F.2d 1335
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas C. KIMBRO, Defendant-Appellant.
 No. 88-4195.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1990.
 
 Before MERRITT, Chief Judge, RYAN, Circuit Judge and BROWN, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Thomas C. Kimbro appeals his convictions for narcotics and firearms violations. He alleges that the trial court erred in denying his motion for acquittal based on insufficient evidence to support a conviction; that the verdict was contrary to the manifest weight and/or sufficiency of the evidence; that the trial court erred in admitting "hearsay, irrelevant, prejudicial, and cumulative testimonial evidence"; and that his trial was tainted by judicial bias. We reject the defendant's claims and affirm the convictions.
 
 I.
 
 2
 Kimbro was convicted by a jury of four drug-related counts. In Count I of the indictment, Kimbro was accused of possessing, with intent to distribute, cocaine base, or "crack," on or about May 9, 1988, in violation of 21 U.S.C. Sec. 841(a)(1). Count II charged him with carrying a firearm in relation to the drug trafficking offense alleged in Count I, in violation of 18 U.S.C. Sec. 924(c). Count III charged him with possessing, with intent to distribute, cocaine base on or about May 25, 1988, again in violation of 21 U.S.C. Sec. 841(a)(1). Count IV charged him with carrying a firearm in relation to the drug trafficking offense alleged in Count III, again in violation of 18 U.S.C. Sec. 924(c).
 
 
 3
 On the afternoon of May 9, 1988, police conducted a drug raid on a barricaded house at 284 Kelton in Columbus, Ohio, and found Kimbro inside. The raid was conducted pursuant to a search warrant by a team of Columbus police officers who suspected that the house was an outlet for crack cocaine.
 
 
 4
 Narcotics Detective Paul Tulloch testified that he had learned that 284 Kelton was a crack house through a "phone tip" and information obtained from informants. On May 6 and May 9, 1988, Detective Tulloch enlisted an informant to buy $50 worth of crack cocaine at the house. Detective Tulloch testified that on each occasion the informant was searched and given $50, then went to the rear of the house, out of the detective's sight, and returned with "what appeared to be a piece of crack cocaine and what was later identified as crack cocaine through our lab." Based on this information, Detective Tulloch obtained a search warrant for the Kelton Street house which he executed on May 9.
 
 
 5
 When the officers entered the Kelton Street premises, they found Kimbro standing with his hands over his head near a fireplace in the living room. They observed a loaded .357 revolver on the mantle of the fireplace near where Kimbro was standing, a .12 gauge shotgun in the dining room closet, nine unit doses of crack cocaine in the tape slot of a VCR, and several hundred dollars in cash, $50 of which was marked money used in the controlled buy earlier that day. A female was found in the dining room.
 
 
 6
 While the officers were conducting their search, Harvey Odom, a neighborhood resident who did not know the police were inside, tried to "cop a 25 cent piece of cocaine" by putting $25 through the hole in the back of the house. He testified that he knew this was the method of buying crack there.
 
 
 7
 On May 25, 1988, Kimbro, who was not arrested on May 9, was discovered at 668 East Star Avenue during another drug raid. Three other persons were also in the house. As with the Kelton Street raid, prior to entering the Star Street house the police conducted a controlled buy of narcotics through an informant. Detective Gayle Kanz conducted the buys on May 24 and 25, 1988. Kanz testified that her informant gave a "sketchy description of a male black" who sold the crack as "roughly 5'8", thin, [and having] gerry curls" or "a male black with a mustache, 5'7" and a [sic] 145 pounds." Detective Kanz added, during cross-examination by defense counsel, that this description fits Mr. Kimbro "quite well."
 
 
 8
 The information obtained through the controlled buys provided the basis for the search warrant that was obtained for the Star house, and which was executed within an hour of the May 25 buy. When the police entered through the unlocked front door, they found Kimbro inside, seated at a small card table. They also found a .38 caliber revolver on the floor near where the officers forced Kimbro to lie down. In addition, they also found a double-barrelled shotgun, a .380 "backup" automatic weapon, an unspecified amount of crack cocaine, and $290, $50 of which had been used in the day's controlled buy.
 
 
 9
 Kimbro was convicted on the basis of this evidence by a jury which was permitted to view photographs and a videotape of each house.
 
 II.
 A. Sufficiency of the Evidence
 
 10
 Defendant claims the trial court erred in rejecting his timely Fed.R.Crim.P. 29 motion for acquittal in which he argued that a guilty verdict would be contrary to the manifest weight of the evidence. He also asserts that there was insufficient evidence to support his conviction. He bases both claims on the theory that no direct evidence linked him to drug selling.
 
 Fed.R.Crim.P. 29, in part, provides:
 
 11
 The court on a motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.
 
 
 12
 The question, therefore, is whether,
 
 
 13
 after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.
 
 
 14
 Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 15
 Concededly, the evidence linking Kimbro to drug selling in large part was circumstantial. He was found in two known crack houses, one of which was barricaded, shortly after a controlled buy was conducted at each. Drugs and weapons were found on the premises, but no one who testified at trial could say they bought drugs from Kimbro.
 
 However, it is settled that:
 
 16
 Our court on appeal will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and that this rule applies whether the evidence is direct or wholly circumstantial.
 
 
 17
 United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984). Accord United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989).
 
 
 18
 Having reviewed the entire record, we cannot conclude that the jury's guilty verdict was not supported by substantial and competent evidence. A rational factfinder, considering the whole evidence in the light most favorable to the prosecution, could conclude beyond a reasonable doubt that Kimbro was a drug seller at both the Kelton and Star Street houses. He was inside both houses, one of which was barricaded, shortly after the controlled drug buys were made. A factfinder could conclude that defendant carried a firearm in relation to the drug trafficking offenses committed at each address because of the proximity of numerous loaded weapons to the defendant within the two houses, and the indisputable fact that firearms are an integral part of drug selling operations. We therefore hold that the trial court did not err in denying defendant's motion for acquittal and that there was sufficient circumstantial evidence to sustain defendant's convictions on all four counts.
 
 B. Evidentiary Rulings
 
 19
 Defendant assigns numerous evidentiary errors to the trial court's conduct of the trial. He timely objected to the admission of all but one item of evidence discussed below. We may reverse the challenged evidentiary rulings only if such rulings were erroneous and, if erroneous, did not amount to a harmless error. Rulings on matters not objected to may be reversed on appeal only if they amount to plain error. Fed.R.Evid. 103(d).
 
 1. Odom's Testimony
 
 20
 Defendant argues that the testimony of Harvey Odom regarding his attempted crack purchase at 284 Kelton was irrelevant and therefore was admitted contrary to Fed.R.Evid. 402, which states that "[a]ll relevant evidence is admissible," and/or Fed.R.Evid. 403, which states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." We reject this argument because Odom's testimony was probative of the fact that 284 Kelton was a known crack house and that the usual method for a prospective purchaser to make a buy was through the hole in the back of the house. The trial court did not abuse its discretion in concluding that the danger of unfair prejudice in admitting Odom's testimony did not substantially outweigh its probative value. Fed.R.Evid. 403.
 
 2. Hearsay
 
 21
 a. Detective Tulloch
 
 
 22
 Defendant argues that Detective Tulloch's testimony was inadmissible hearsay. Inadmissible hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Fed.R.Evid. 801(c). Such statements are not admissible, Fed.R.Evid. 802, unless they fit within one of the exceptions to the hearsay rule. See Fed.R.Evid. 803 and 804. Defendant first asserts that Detective Tulloch should not have been permitted to testify as to the controlled buys at the Kelton house because he did not see the actual money-for-crack transaction between the informant and seller take place.
 
 
 23
 Although Detective Tulloch relied to a great extent on information his informant provided, his testimony related to facts regarding the procedures he observed before and after the controlled buys and, as such, was not hearsay. The trial court did not err in admitting this testimony.
 
 
 24
 Defendant also asserts that Detective Tulloch should not have been allowed to state that the substance handed to him by the informant was "what appeared to be a piece of crack cocaine and what was later identified as crack cocaine through our lab." Since defendant made no objection to this testimony at trial, the trial court's ruling may be reversed only if it was plain error.
 
 
 25
 The trial court's ruling admitting the first part of that statement was not plain error since it is not clear from the record that Detective Tulloch, an experienced narcotics officer, testified wholly without firsthand knowledge that the substance appeared to be crack cocaine. The latter portion of the statement, that the contraband "was later identified as crack cocaine through our lab," is indeed hearsay. But, considering the record as a whole, including the circumstances in which the "crack" was purchased, the absence of any objection to the statement, and Detective Tulloch's unchallenged personal opinion that the item "appeared to be a piece of crack," we think the trial court's error in admitting the statement was harmless under Fed.R.Crim.P. 52(a). The conviction ought not be reversed on this ground.
 
 
 26
 b. Detective Kanz
 
 
 27
 Kimbro also argues that Detective Kanz's testimony relaying the informant's "sketchy description" of the seller as a black male was inadmissible hearsay. Defendant claims this testimony was offered to identify him as the drug seller.
 
 
 28
 On direct examination, Detective Kanz testified to the informant's description of the seller as part of an explanation of the amount of information the police had regarding the Star Street house. This testimony was thus offered and admitted as a response to a question raised by defense counsel on cross-examination of preceding witnesses, and was not offered to prove what the drug seller looked like. It was only during cross-examination, at defense counsel's prodding, that Detective Kanz stated that Kimbro matched the description "quite well." Defendant cannot now object to testimony he himself elicited.
 
 
 29
 c. Photographs and Videotapes
 
 
 30
 Defendant further argues that photographs and a videotape of the Kelton and Star Street houses, prepared after the raids, were unfairly prejudicial, contrary to Fed.R.Evid. 403. These items were properly authenticated and were relevant to assist the jury to understand the layout of the buildings. The court did not abuse its discretion in admitting this evidence.
 
 
 31
 d. Judicial Bias
 
 
 32
 Defendant asserts he was denied a fair trial because, he claims, the trial court repeatedly interrupted and questioned witnesses in order to assist the prosecution, made comments and admonitions unfavorable to the defendant, and restricted examination of defense witnesses. At oral argument before this court, defendant made much of several bench conferences between the trial court and prosecuting attorney from which defense counsel was excluded, and offered as an illustration of the trial court's bias the court's question to defendant when he took the stand: "[People who run crack houses] are all kind of young? Like you?"
 
 
 33
 We have carefully read the record and cannot conclude that defendant was denied his fifth amendment due process right to a fair trial. Our tally of the instances in which the trial court could arguably be accused of assisting the prosecution or foiling the defendant do not demonstrate judicial bias. There are numerous instances in which the trial court interrupted and questioned witnesses or admonished counsel, and clearly, defense counsel was admonished more often than the prosecutor. The nature and number of those interruptions reveal an inexplicable intrusiveness on the part of the trial court, but, on the whole, we think the instances in question did not amount to prejudicial error. The bench conferences conducted in the absence of defense counsel were apparently concerned with scheduling and other "housekeeping" matters. Obviously, they were ill-advised if only because of the potential for an improper inference by the observing jurors. But we cannot conclude that these demonstrate bias or resulted in any prejudice to the defendant, particularly in view of the strong, if circumstantial, evidence of his guilt.
 
 
 34
 The trial court's question to the defendant concerning whether people who run crack houses are young "like you" does not demonstrate bias. The question was asked in the context of an interchange in which the issue being pursued by counsel was whether most crack dealers are juveniles or adults. We cannot conclude that this question demonstrates judicial bias.
 
 III.
 
 35
 We hold that there was sufficient evidence to sustain Thomas Kimbro's convictions for possession of narcotics and firearms, that evidentiary rulings cited by defendant as errors were proper, and that defendant's right to a fair trial was preserved. We AFFIRM the district court's conviction.