**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marvin WILHITE, Defendant–**
**Appellant.**

**No. 03–5617.**

United States Court of Appeals,
Sixth Circuit.

Aug. 25, 2004.

Steven S. Neff, Asst. U.S. Attorney, U.S. Attorney's Office, Chattanooga, TN, for Plaintiff–Appellee.

Nikki C. Pierce, Federal Defender Services, Greeneville, TN, for Defendant–Appellant.

Before SILER, MOORE, and COLE, Circuit Judges.

PER CURIAM.

Defendant Marvin Wilhite appeals his sentence of life imprisonment based on robbery and firearm convictions. He raises issues involving the failure to appoint substitute counsel, improper identification by witnesses, and the unconstitutionality of the Hobbs Act. We **AFFIRM.**

## BACKGROUND

In 2002, Wilhite entered a liquor store, selected a bottle of Smirnoff vodka, pointed a gun at the store clerk, Louise Defur, and threatened to kill her if she did not give him money. As Wilhite fled the robbery, Defur saw him enter his car. After the police were contacted, Wilhite's car was spotted and a pursuit ensued. At the same time, Officer Jonathan Watkins responded to the liquor store robbery. After speaking to Defur, who described Wilhite's clothing and black left eye, Officer Watkins and Defur reviewed the robbery, which was filmed on the store's surveillance video. Officer Watkins's review of the video corroborated Defur's description

of Wilhite. Meanwhile, Wilhite was apprehended. Upon his arrest, the police discovered a bottle of Smirnoff vodka in his car and observed that Wilhite matched the description provided by both Defur and Officer Watkins.

Wilhite was indicted on federal Hobbs Act robbery and firearm violations. Before trial began, Rita LaLumia, Wilhite's counsel, moved to withdraw from his representation. LaLumia insisted that a difference of opinion concerning trial strategy had arisen between her and Wilhite, which resulted in an irreconcilable conflict. At a hearing on the motion, LaLumia informed the district court that Wilhite wanted a different attorney since he did not agree with her trial strategies. The district court explained to Wilhite that LaLumia was a competent attorney whose advice was in his best interests. Wilhite replied that he needed substitute counsel because LaLumia was not presenting the defense he wanted, he did not trust her judgment, there was a total communication breakdown, and he felt LaLumia and "her office work[ed] for" the government. Wilhite was again advised that LaLumia's trial strategies were likely due to her obligations as an officer of the court—any other attorney appointed would be bound by the same rules of professionalism. Therefore, LaLumia's motion to withdraw was denied.

As a result, Wilhite chose to proceed *pro se* and, at the conclusion of a jury trial, was convicted of interference with commerce by threats or violence, in violation of the Hobbs Act, 18 U.S.C. § 1951, brandishing a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and being a felon in possession of a firearm, in violation

of 18 U.S.C. §§ 922(g) and 924(e). Pursuant to Wilhite's request, the district court appointed LaLumia as counsel for his sentencing and appeal. Wilhite was sentenced to mandatory terms of life imprisonment.

## DISCUSSION

 Wilhite first argues that the district court abused its discretion in denying LaLumia's motion to withdraw as counsel and appoint substitute counsel. We consider four factors in our review of the motion's denial:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*United States v. Mack*, 258 F.3d 548, 556 (6th Cir.2001) (citations omitted). As for the first factor, since LaLumia moved to withdraw just six days before trial was to begin, the motion was untimely. *See United States v. Williams*, 176 F.3d 301, 314 (6th Cir.1999). Next, the district court adequately inquired into the nature of the conflict; however, neither LaLumia nor Wilhite wished to provide any details.[1] *Cf. United States v. Jennings*, 945 F.2d 129, 132 (6th Cir.1991). Further, LaLumia's refusal to initiate a defense that could violate her obligations as an officer of the court does not constitute a total communication breakdown. *See United States v. Rich*, 221 F.3d 1336, 2000 WL 923493, at *4 (6th Cir.2000) (table). Although Wilhite

---

1. As evident from the record, Wilhite wanted LaLumia to submit the defense that it was actually his brother Benjamin who robbed the liquor store. This defense, which Wilhite pursued at trial, relied upon Benjamin's perjurious testimony.

vehemently claimed a total communication breakdown, he nevertheless employed LaLumia's services as standby counsel during trial and acquiesced in her services for sentencing purposes. Lastly, since Wilhite's trial was only continued for approximately one month so he could develop his strategy, the "prompt and efficient administration of justice" justified his proceeding *pro se*, with LaLumia as standby counsel. *See Williams*, 176 F.3d at 314. In any event, because of the overwhelming evidence of Wilhite's guilt, any error as to the denial of his motion for substitute counsel was harmless. *See* Fed.R.Crim.P. 52(a).

Wilhite next argues that the district court erroneously permitted three witnesses to testify that he robbed the liquor store. As Wilhite failed to object to the introduction of any of the complained evidence, we review for plain error. *See United States v. Demjanjuk*, 367 F.3d 623, 629 (6th Cir.2004); Fed.R.Crim.P. 52(b); Fed.R.Evid. 103(d). To establish plain error under Fed.R.Crim.P. 52(b), we must determine: (1) if an error occurred; (2) if so, was the error plain; (3) if plain, did the error affect substantial rights; and (4) whether this plain error "affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Jones*, 108 F.3d 668, 670 (6th Cir.1997) (*en banc*) (citation omitted).

■ There was no plain error here. Officer Watkins's testimony, wherein he identified Wilhite as the culprit, did not invade the province of the jury, *see United States v. Maddox*, 944 F.2d 1223, 1230–31 (6th Cir.1991), and was based on his firsthand observation of Wilhite immediately after the robbery. *See* Fed.R.Evid. 701. Lila Statom, the state prosecutor, called by Wilhite, testified that it was Wilhite in the surveillance video. Statom's identification of Wilhite was neither indicative of her choosing sides, *see* Fed.R.Evid. 701 advisory committee's note, nor invasive of the jury's province. *See Maddox*, 944 F.2d at 1230–31. When Wilhite queried whether Statom knew that Benjamin had given an affidavit that he robbed the liquor store, Statom replied that Benjamin was trying to falsely accept responsibility for the crime. As this alleged impropriety was elicited by Wilhite on direct examination, he cannot complain that the district court should have *sua sponte* stricken such testimony. *See United States v. Kimbro*, 893 F.2d 1335, 1990 WL 1997, at *4 (6th Cir. 1990) (table). Baxter Bryant, the probation officer who supervised both Wilhite and Benjamin, testified that it was Wilhite in the surveillance video. Bryant's testimony was properly evoked to rebut Benjamin's claim that he was the robber. *See United States v. Levy*, 904 F.2d 1026, 1031–32 (6th Cir.1990). Wilhite's cross-examination of Bryant was not hampered because the jury was aware that Bryant was a probation officer, *cf. United States v. Calhoun*, 544 F.2d 291, 295 (6th Cir.1976), and Wilhite conceded that he was a convicted felon. In addition, the district court properly denied Wilhite's requested jury instruction concerning Defur's identification testimony. *See United States v. Jackson*, 347 F.3d 598, 607 (6th Cir.2003).

■ Wilhite's final argument, that the Hobbs Act is an unconstitutional application of congressional power, also fails. "To support a conviction under the Hobbs Act, we have required the government to demonstrate nothing more than a *de minimis* effect on interstate commerce." *United States v. Wang*, 222 F.3d 234, 237 (6th Cir.2000). The liquor store manager testified that approximately ninety-eight percent of the alcohol ordered for the store comes from outside Tennessee. Accordingly, the government demonstrated Wilhite's actions had a *de minimis* effect on

interstate commerce. *See United States v. Smith,* 182 F.3d 452, 456 (6th Cir.1999).

**AFFIRMED.**