UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Francis HANLEY,
Defendant–Appellant.

No. 89–1783.

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1990.

Decided June 28, 1990.

---

Richard S. Murray, Asst. U.S. Atty. (argued), Grand Rapids, Mich., for plaintiff-appellee.

James R. Jessup, Marquette, Mich., and Benjamin J. White (argued), Commercial Law Corp., Detroit, Mich., for defendant-appellant.

Before MARTIN and BOGGS, Circuit Judges, and HACKETT, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Following his guilty plea for armed bank robbery Robert Francis Hanley challenges the district court's inclusion of juvenile offenses in the computation of his criminal history under the guidelines.

Around 2:00 p.m. on December 16, 1988, Hanley, Phillip Mannebach, and Thomas Gene Lemerand entered the Bark River Branch of the Northern Michigan Savings Bank in Delta County, Michigan. All three men were wearing "chucks", hats with cut-out eyeholes, and gloves to avoid identification. Mannebach possessed a sawed-off .410 shotgun and Lemerand carried a .44 magnum pistol. Two tellers, June Constantineau and Olive Racicot, were in the vault counting money. Mannebach pulled out the sawed-off shotgun and ordered the women out of the vault. The women were taken to a back room where Hanley bound and gagged them with duct tape. The robbers took around $60,000 from the vault and cash drawers and fled the bank.

A few days later, Mannebach was stopped in Escanaba, Michigan for a minor traffic violation. While processing the traffic violation, the investigating officer discovered that Mannebach's license was suspended and impounded his automobile. During an inventory search of the vehicle, $12,000 in cash including some bills with serial numbers recorded by the Northern Michigan Savings Bank were found in the trunk of Mannebach's car. Mannebach

---

* The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation.

was then interrogated about the robbery of the Northern Michigan Savings Bank.

Based on Mannebach's statements to the authorities, a search warrant was executed at the residence of Thomas Hanley and his son, defendant Robert Francis Hanley. In and around a "burn barrel" in Hanley's backyard were fragments of two money wrappers and a dollar bill, paper clips, rubber bands and fragments of clothing. On the basis of Mannebach's statement and this physical evidence, Thomas Lemerand and Robert Hanley were taken into custody on Wednesday, December 21, 1988. Both Thomas Lemerand and Hanley gave fragmentary statements that appeared to implicate them in the robbery. Later, through Thomas Lemerand's attorney, the two firearms believed to have been used in the robbery and more than $9,000 of additional cash were turned over to authorities. Defendant Lonnie McRae came to the attention of investigating officers during this period because: 1) some of the arrested suspects identified McRae's car, a Nissan, as one of the vehicles brought to the vicinity of the bank for use in the getaway; 2) McRae was reportedly present during the recovery of some of the bank robbery proceeds by Thomas Lemerand's attorney; and 3) McRae was spending cash in an ostentatious fashion after December 16, 1988, the date of the robbery. Based on these and other facts, a search warrant was authorized and executed at a house rented by McRae on January 11, 1989. At that time, $3,700 in cash was found in a refrigerator in McRae's house. Included in that amount were bills taken in the bank robbery.

On January 13, 1989, Hanley and Rodney James Lemerand were indicted in the Western District of Michigan for the December 16, 1988 armed robbery of the Bark River Branch of the Northern Michigan Savings Bank, in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2. Thomas Gene Lemerand and Mannebach pled guilty to armed bank robbery. Hanley and McRae were charged in a superseding indictment with conspiracy to commit armed bank robbery and the commission of armed bank robbery, in violation of 18 U.S.C. § 2113(d) and 18 U.S.C. § 2. McRae was also charged in the superseding indictment with knowingly possessing and receiving stolen property, in violation of 18 U.S.C. § 2113(c) and 18 U.S.C. § 2. On April 11, 1989, pursuant to a plea agreement, Hanley pled guilty to Count 2 of the first superseding indictment, armed bank robbery in violation of 18 U.S.C. § 2113(d).

The probation officer calculated Hanley's criminal offense level to be at level 24. Guidelines § 2B3.1 provides a base criminal offense level of 18 for violations of 18 U.S.C. § 2113(d). That level was increased by three levels because the amount of money involved in the robbery was between $50,001 and $250,000. Guidelines § 2B3.1(b)(1)(D). A further three-level increase was warranted because a firearm was used during the offense. Guidelines § 2B3.1(b)(2)(C). A two-level increase was then imposed because the tellers were restrained to facilitate the commission of the offense. Guidelines § 2B3.1(b)(4)(B). Finally, a two-level decrease was warranted because of Hanley's acceptance of responsibility for his actions. Guidelines § 3E1.1(a).

The probation officer then calculated Hanley's criminal history category to be IV based on nine points from five offenses committed by him before his 18th birthday. In arriving at nine points, the probation officer applied Guidelines § 4A1.2(d)(2)(A) and calculated three of the offenses at one point each and two of them at two points each because of the lengthy commitment for those two crimes, resulting in an initial total of seven points. The probation officer added two more points to the initial total because the armed bank robbery offense to which Hanley pled guilty was committed within two years of his discharge from juvenile confinement, Guidelines § 4A1.1(e), resulting in a final prior offense level of nine points and a criminal history classification of category IV. This classification resulted in a sentencing range of 77 to 96 months, or six years, five months to eight years, in prison based on an offense level of 24 and a criminal history category of IV. Guidelines Ch. 5, Part A.

Hanley moved to have each of his prior juvenile convictions calculated at a level of one point for each offense, resulting in an initial criminal history score of 5 or a criminal history category of III. He based this argument on the contention that his two commitments to the Michigan Department of Social Services were not "confinements" as defined in Guidelines § 4A1.2(d)(2)(A) and resulting in two points for each confinement over sixty days. Under Hanley's argument, his two point enhancement for committing an offense within two years of his release from juvenile facilities for a previous offense would also be disallowed because his juvenile detention would not constitute an imprisonment under Guidelines § 4A1.1(e). Under Hanley's calculations, his sentencing range would be 63 to 78 months, or five years, three months to six years, six months, based on an offense level of 24 and a criminal history category of III. Guidelines Ch. 5, Part A.

The district court, after entertaining argument by the government and Hanley's counsel, concluded that "confinement" under Guidelines § 4A1.2(d)(2)(A) included a commitment to the Department of Social Services and that placement within a Department facility constituted an "imprisonment" within the contemplation of Guidelines § 4A1.1(e). The district court found Hanley's offense level to be level 24 and his criminal history to be category IV and sentenced Hanley to 78 months or six years, six months in prison.

Hanley maintains that juvenile commitment to a Department of Social Services facility is not a "confinement" within the meaning of that term in Guidelines § 4A1.2(d)(2)(A). He claims that because a juvenile court adjudication is not a criminal conviction, subsequent placement following a juvenile court adjudication is not like incarceration, therefore, it is not a confinement. As a result of this allegedly erroneous categorization, Hanley received an incorrectly inflated criminal history category.

The guidelines provide, in pertinent part:

(d) *Offenses Committed Prior to Age Eighteen*

(1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence.

(2) In any other case,

(A) add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;

(B) add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

Guidelines § 4A1.2(d)(2)(A) and (B). Thus, the guidelines clearly state that the prior incarceration provisions used for determining a defendant's criminal history category covers both adult and juvenile offenses.

Certain limits are imposed upon the use of juvenile convictions.

*Offenses Committed Prior to Age Eighteen. Section 4A1.2(d) covers offenses committed prior to age eighteen. Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted. To avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a "juvenile," this provision applies to all offenses committed prior to age eighteen.*

Guidelines § 4A1.2, comment. (n. 7). All of Hanley's juvenile offenses were committed within five years of the armed bank robbery offense in this case.

On February 2, 1984, Hanley was arrested for conspiracy to break and enter his grandmother's home and for malicious de-

struction of property for kicking a hole in her door after she refused to allow him to enter her house. He received twelve months probation for the malicious property destruction charge; the conspiracy charge was dismissed. Hanley was thirteen years old at the time of this offense. This juvenile offense results in one criminal history point under Guidelines § 4A1.2(d)(2)(B).

On October 3, 1984, at age fourteen, Hanley was arrested for assaulting his mother after she attempted to force him to go to school. He received a continuance of his probation for this offense which also results in one criminal history point under Guidelines § 4A1.2(d)(1)(B).

Twenty days later, Hanley was arrested for stealing his grandmother's 1970 Cadillac, which he subsequently wrecked, and for assaulting James Therrian following the accident. Following a November 2, 1984, hearing, Hanley was placed in the Shiloh Family Home in Marquette, Michigan. He remained in state custody until July 28, 1985. Due to the length of the confinement, this offense increases Hanley's criminal history score by two points. Guidelines § 4A1.2(d)(2)(A).

Following his release, Hanley was arrested for public intoxication on August 28, 1985. He was fifteen years old. On September 3, 1985, Hanley was recommitted to state juvenile facilities which he left without permission on November 18, 1985. He was arrested and committed to state custody until May 6, 1987. This offense also increases Hanley's criminal history score by two points. Guidelines § 4A1.2(d)(2)(A).

On August 11, 1987, following his discharge from Michigan juvenile confinement, Hanley assaulted a Delta County, Michigan Deputy Sheriff following an altercation between Hanley and his father. He pled guilty to simple assault and received six months probation. This offense raises the criminal history total by one point. Guidelines § 4A1.2(d)(2)(B).

Because the bank robbery was committed within two years of Hanley's release from state custody on May 6, 1987, under Guidelines § 4A1.1(e), he receives two more criminal history points. Thus a total of nine points or a criminal history category of IV was determined.

▪ The classification of a juvenile placement is a factual question to which the "clearly erroneous" standard of review applies. 18 U.S.C. § 3742(e); *see United States v. Perez,* 871 F.2d 45, 47–48 (6th Cir.1989). The guidelines clearly state that the prior incarceration provisions cover both adult and juvenile offenses for the purpose of determining a defendant's criminal offense level. Guidelines § 4A1.2(d)(2)(A). Most importantly, we recently addressed the issue raised by Hanley in *United States v. Kirby,* 893 F.2d 867 (6th Cir.1990), where we held that prior juvenile adjudications were to be considered under the guidelines and that the adjudication of delinquency by a Kentucky juvenile court with a subsequent commitment to the Kentucky Cabinet for Human Resources was "incarceration" under the guidelines. Under *Kirby* and the text of the Sentencing Guidelines, the district court and probation officer properly considered Hanley's juvenile commitments as "confinement" in determining his criminal history category under Guidelines § 4A1.2(d)(2)(A). Similarly, Hanley's commitment to a juvenile facility constitutes an "imprisonment" for the purposes of applying the two-point enhancement provision in Guidelines § 4A1.1(e).

Hanley also contends that his trial counsel was ineffective under the sixth amendment's guarantee of the effective assistance of counsel for defendants in criminal cases because his counsel did not make any motions to suppress statements made by Hanley's co-defendants. He also claims that his counsel gave him false expectations of the extent of his potential jail time, and he claims that his counsel failed to ask for an adjournment of the sentencing hearing to clarify the juvenile commitment/incarceration issue.

▪ Hanley fails the test for ineffective assistance of counsel. "First, the defendant must show that counsel made errors so serious that counsel was not func-

tioning as the counsel guaranteed by the Sixth Amendment. Second, the defendant must show prejudice by showing that the errors were so serious as to deprive him of a fair trial." *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir.1987) (summarizing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We reject Hanley's first allegation of ineffective assistance of counsel because Hanley's counsel may have wisely decided not to pursue suppression motions that would have likely been futile in view of the government's access to co-defendants' statements following their guilty pleas. As for Hanley's allegation of misinformation regarding "good time", it is significant that Hanley has never sought to withdraw his guilty plea.

It is true that Hanley's attorney incorrectly advised him that he would be eligible for parole in one-third the time he received for a sentence. If Hanley pled guilty solely in reliance upon this advice, a reversal for ineffective assistance of counsel would be in order. It is significant, however, that the letter from Hanley's attorney to Hanley containing this advice was mailed to Hanley thirteen days *after* he pled guilty. Consequently, there is no showing beyond Hanley's allegations in his *pro se* brief that he pled guilty solely in reliance on his attorney's incorrect sentencing advice. During the plea proceedings, Hanley was informed of the potential range of incarceration for armed bank robbery and was informed that he would be sentenced under the guidelines. He specifically denied that he had received any promises of leniency *or any prediction of his sentence*:

> THE COURT: Okay. Do you understand that this charge carries a maximum by law of up to a 25—up to 25 years in prison and/or up to a $1 million fine in this matter?
>
> DEFENDANT HANLEY: Yes, I do.
>
> THE COURT: And a mandatory $50 assessment, plus a provision for restitution if you are financially able to. Has anyone threatened you or coerced you to get you to plead guilty?
>
> DEFENDANT HANLEY: No.

> THE COURT: Do you agree with this plea negotiation that your attorney and the United States Attorney have entered into?
>
> DEFENDANT HANLEY: Yes.
>
> THE COURT: Let the record reflect that the Court accepts this plea negotiation in this matter—this plea agreement in this matter.
>
> Has anyone made any promises of leniency to you or any prediction of what the sentence would be if your guilty plea is accepted by this Court?
>
> DEFENDANT HANLEY: No.
>
> THE COURT: Do you understand that this Court is required to consider certain sentence guidelines that have been established in this case, and this Court may depart therefrom under unusual circumstances?
>
> DEFENDANT HANLEY: Yes.

It is also significant that Hanley chose not to withdraw his plea during or following the sentencing proceeding in view of the district court's careful explanation of the sentence imposed under the guidelines.

■ As for Hanley's counsel's failure to delay the sentencing proceeding, the district court had complete information and considered Hanley's contentions. It is clear that Hanley's position was not prejudiced by his counsel's decision not to press for further delays regarding the "confinement" issue. Finally, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Flippins*, 808 F.2d at 18. Hanley has not overcome this presumption.

Therefore, we affirm the district court's calculation of Hanley's sentence, and we reject his allegations that his counsel in the proceedings below was ineffective.

Judgment affirmed.