NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0026n.06

Case No. 23-1127

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Jan 19, 2024

KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EUGENE BILAL ANDERSON,

    Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: GIBBONS, WHITE, and THAPAR, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Eugene Anderson appeals his fifty-one-month sentence for counterfeiting United States currency. For the reasons that follow, we affirm.

I.

In March 2021, a federal grand jury returned an indictment charging Anderson with conspiracy to make and pass counterfeit U.S. currency (Count 1); making counterfeit U.S. currency (Count 2); and passing counterfeit U.S. currency (Count 3). According to the indictment, Anderson used several printers, a scanner and a paper cutter to alter legitimate federal reserve notes so that the bills displayed higher face values. Anderson and his co-defendants then passed the counterfeit bills at numerous businesses in Southwest Michigan, obtaining "genuine United States currency and other things of value" in exchange. DE 1, Indictment, Page ID 2. In an interview following his arrest, Anderson admitted that he had been counterfeiting currency for about two years.

At his arraignment, Anderson pled not guilty, and the magistrate judge released him on a $20,000 appearance bond. As a condition of pretrial release, the magistrate ordered that Anderson reside at a community correction facility and submit to drug testing and treatment. Roughly two months after his placement at the assigned facility, Anderson submitted a positive drug test. And the following day, he absconded. A warrant for Anderson's arrest then issued, but Anderson remained missing for the next fourteen months. Finally, in August 2022, police re-apprehended Anderson while responding to a report of customers attempting to use counterfeit bills at a McDonald's restaurant. Shortly after his arrest, Anderson pled guilty to the three-count indictment.

In advance of sentencing, the United States Probation Office prepared a presentence report. Two elements of that report provide the backdrop to Anderson's appeal. First, based on Anderson's flight from pretrial supervision, Anderson's offense level computation (a) included a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and (b) did not include a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Second, based on a term of probation connected with a 2015 check forgery conviction, Anderson's criminal history score included a two-point enhancement — pursuant to U.S.S.G. § 4A1.1(d) — for committing the instant offenses "while under a criminal justice sentence." DE 130, Presentence Report, Page ID 669.

At sentencing, Anderson objected only to the probation officer's failure to credit him for acceptance of responsibility. After hearing argument from both parties, the district court overruled the objection. Accepting the probation officer's calculation of a total offense level of 15 and a criminal history category of VI, the court then sentenced Anderson to a top-of-the-range sentence of 51 months' imprisonment. This appeal timely followed.

II.

Anderson challenges the district court's sentence on two grounds, which we discuss in turn.

A.

Anderson first argues that the district court erred in denying him credit for acceptance of responsibility because he pled guilty, participated in the presentence interview, and expressed remorse for his crimes. Before addressing the merits of this argument, we note that the applicable standard of review in this context remains unsettled. *See United States v. Thomas*, 933 F.3d 605, 611–12 (6th Cir. 2019) (compiling conflicting cases); *see also United States v. Guerrero*, 76 F.4th 519, 531 (6th Cir. 2023) ("[T]he standard of review for [appeals from the denial of a reduction under § 3E1.1] is not entirely clear."); *United States v. Cadieux*, 846 F. App'x 389, 392 (6th Cir. 2021) (noting the absence of "clear consensus . . . about what standard of review applies in appeals challenging the application of [§ 3E1.1]"). Nevertheless, because Anderson's objection fails even under de novo review, we, like several panels before us, defer resolution of this open question to a later date. *See, e.g.*, *Cadieux*, 846 F. App'x at 392 ("Because Cadieux's arguments fail even under de novo review (the most favorable standard to him), we 'leave resolution of the standard of review for another day.'") (quoting *Thomas*, 933 F.3d at 610). Thus, we turn to the merits.

The Sentencing Guidelines provide for a reduction in a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense[.]" U.S.S.G. § 3E1.1(a). And when a defendant pleads guilty and admits the conduct comprising the offense of conviction, he provides "significant evidence of acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3. But this does not mean that a defendant who pleads guilty is "entitled to an [acceptance of responsibility] adjustment . . . as a matter of right." *Id.* Instead, the Guidelines commentary provides district courts with a variety of relevant factors to weigh, including the voluntariness of

the defendant's withdrawal from criminal conduct, the timeliness of his acceptance of responsibility, and the consistency — or inconsistency — of his conduct with his professed acceptance of responsibility. U.S.S.G. § 3E1.1 cmt. nn. 1(b), 1(h) and 3. And of particular relevance here, conduct which justifies application of a § 3C1.1 enhancement for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.4. For "[o]nly in an 'extraordinary' case may a defendant receive both an offense-level increase for obstruction and an offense-level decrease for acceptance of responsibility." *Thomas*, 933 F.3d at 612 (quoting § 3E1.1 cmt. n.4).

Anderson contends that his conduct represents one such extraordinary case. Specifically, Anderson highlights that after his re-arrest, he "[pled] guilty to all charges," "was totally forthcoming in terms of his involvement in the offense conduct," and "expressed sincere remorse." CA6 R. 14, Appellant Br., at 10. Anderson also draws a parallel between his conduct and that of the defendant in *United States v. Gregory*, 315 F.3d 637 (6th Cir. 2003), who this court held was entitled to credit for acceptance of responsibility, despite his attempt to shield his co-defendant from prosecution by instructing her not to cooperate with law enforcement. *Id.* at 640–41. Like Gregory, Anderson argues that he too "abandoned his attempt to obstruct justice and made a great effort to accept responsibility," entitling him to a two-level reduction under § 3E1.1(a). CA6 R. 14, Appellant Br., at 12.

We find Anderson's contentions meritless, for several reasons. First, neither the timeliness nor voluntariness of Anderson's acceptance of responsibility supports application of the § 3E1.1(a) reduction. After his failed drug test and flight from pretrial supervision, Anderson remained a fugitive from justice for over fourteen months. On any one of the 428 days he spent at large, Anderson could have turned himself in and willingly accepted responsibility for his actions. But

Anderson did not do so, choosing to instead force law enforcement to catch him. And even at that juncture, when police had found him and his re-apprehension was all but guaranteed, Anderson continued to skirt responsibility by providing arresting officers with a false name and date of birth. Moreover, at the time of his arrest, Anderson was again in possession of counterfeit currency. These actions are patently inconsistent with acceptance of responsibility, and they reflect an unavoidable truth: Anderson did not voluntarily own up to his actions; he merely ran out of options. *See United States v. Starks*, 64 F. App'x 501, 502 (6th Cir. 2003) (denying credit for acceptance of responsibility where defendant absconded from pretrial detention for nine months.)

On top of this, Anderson fails to demonstrate that any of his post-arrest conduct renders his case "extraordinary." U.S.S.G. § 3E1.1 cmt. n.4. "To qualify as an extraordinary circumstance, a defendant must do something more than merely plead guilty following his obstruction of justice." *Starks*, 64 F. App'x at 502; *see also United States v. Harper*, 246 F.3d 520, 528 (6th Cir. 2001) ("[I]t is the ordinary case in which a defendant pleads guilty after his attempts to obstruct justice are thwarted."), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). Here, the only evidence of "extraordinary" conduct that Anderson musters is his guilty plea, his participation in the presentence investigation process, and his expressions of remorse. These acts, though praiseworthy, constitute an entirely ordinary course of conduct for those faced with a criminal indictment. Had Anderson quickly turned himself in after his escape, his immediate change of heart might have provided grounds for deeming his actions "extraordinary." *See Harper*, 246 F.3d at 528 ("For example, if a defendant awaiting trial escapes from custody but then immediately turns himself into authorities, this could constitute an 'extraordinary' case in which a defendant accepts responsibility subsequent to an attempt to obstruct justice."). But Anderson chose a different path. His guilty plea and expressions of remorse demonstrate little

more than resignation to the failure of his attempted obstruction, and they fall well short of extraordinary. *Id.*

Finally, Anderson's reliance on our decision in *Gregory* is misplaced. There, Kenneth Gregory, a prisoner at Federal Correctional Institute, Memphis, enlisted his sister's help smuggling drugs into prison. *Gregory*, 315 F.3d at 639. Prison officials quickly foiled the scheme, and when interviewed by federal investigators, Gregory admitted his culpability and agreed to cooperate in their investigation. *Id.* Hoping to keep his accomplice out of trouble, however, Gregory later sent his sister a letter advising her not to cooperate with law enforcement and suggesting innocent explanations that she could use to defend her conduct. *Id.* But on the very same day that he sent the letter, Gregory reversed course. *Id.* During an interview with federal investigators, Gregory called his sister, encouraged her to cooperate in the investigation, and put her on the phone with the federal agent who was interviewing him. *Id.*

Despite his attempted obstruction, for which Gregory received a two-level enhancement under U.S.S.G. § 3C1.1, a panel of this court found that Gregory was entitled to credit for acceptance of responsibility as well. *Gregory*, 315 F.3d at 640–41. The court analogized Gregory's actions to those of the defendant in *United States v. Williams*, 176 F.3d 301 (6th Cir. 1999), who received a downward adjustment under § 3E1.1 after he "recanted his trial testimony and moved to withdraw his plea agreement, subjecting the court to a hearing on the issue, before restating his original position and accepting responsibility." *Id.* at 641 (quoting *Williams*, 176 F.3d at 311). And the court observed that not only had Gregory "never denied his own responsibility and guilt," but further that "[a]ll of [Gregory's] obstructive conduct [had] predated his indictment." *Id.* Given these "extraordinary" circumstances, the court remanded Gregory's case for

resentencing with instructions to downwardly adjust his offense level for acceptance of responsibility. *Id.* at 644.

The circumstances surrounding Anderson's ultimate admission of guilt contrast markedly with the facts this court confronted in *Gregory*. Notwithstanding his inculpatory statements to police during his first arrest, Anderson initially denied his own responsibility and guilt by pleading not guilty. And unlike Gregory, most of Anderson's obstructive conduct postdated his indictment. Furthermore, Anderson's obstructive conduct lasted well over a year, while Gregory managed to nullify his attempted obstruction within a matter of hours. Finally, and perhaps most importantly, Gregory voluntarily reversed his attempted obstruction, while Anderson surrendered to law enforcement only when left with no other option. Anderson no doubt had the opportunity to demonstrate the same extraordinary conduct that Gregory exhibited, but he chose not to. Accordingly, the district court did not err in denying him credit for acceptance of responsibility under § 3E1.1.

B.

Anderson next objects to the calculation of his criminal history score, challenging the district court's conclusion that his offense conduct overlapped with his probationary period for a prior conviction. Because Anderson failed to raise this objection before the district court, we review his criminal history scoring for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). To meet this burden, Anderson must show that the district court's calculation constituted (1) an error, (2) that is obvious and clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Prater*, 766 F.3d 501, 518 (6th Cir. 2014). We find that Anderson fails to make such a showing.

The Sentencing Guidelines instruct the district courts to add two points to a defendant's criminal history score "if the defendant committed the instant offense while under any criminal justice sentence, including probation." U.S.S.G. § 4A1.1(d).[1] The parties agree that Anderson completed the term of probation connected with his 2015 check forgery conviction in June 2019. They disagree, however, as to when Anderson's offense conduct in the instant case began. Citing the indictment and the government's factual recitation at his change-of-plea hearing, Anderson contends that he pled guilty to "conduct occurring between September 28, 2019, and January 20, 2020," thus ruling out any overlap with his term of probation. CA6 R. 14, Appellant Br., at 14. The government, on the other hand, contends that Anderson's offense conduct includes all "relevant conduct" as defined by U.S.S.G. § 1B1.3, which would capture both (1) the 2018 and 2019 counterfeiting that Anderson admitted to when initially arrested and (2) Anderson's production and use of a counterfeit bill at a CVS in March 2019. We find that the government's position represents the correct application of the Sentencing Guidelines.

The application notes to § 4A1.1(d) state that the provision's two-point increase applies "if the defendant committed any part of the instant offense (i.e., *any relevant conduct*) while under any criminal justice sentence." U.S.S.G. § 4A1.1(d) cmt. n.4 (emphasis added).[2] In this case, the

---

[1] Note that the district court sentenced Anderson under the 2021 version of the Sentencing Guidelines, so we reference and cite to the 2021 version in this opinion. The provision discussed herein, § 4A1.1(d) in the 2021 version, is now codified in the 2023 Sentencing Guidelines at § 4A1.1(e).

[2] The government raises (and dismisses) the possibility that application note 4 impermissibly expands § 4A1.1(d)'s scope, as would run contrary to *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). But Anderson makes no such argument. *See Georgia-Pac. Consumer Prods. LP v. NCR Corp.*, 40 F.4th 481, 483 (6th Cir. 2022) ("Generally, an argument not raised in an appellate brief or at oral argument is forfeited[.]"). And even he did, his burden under plain error review would be to point to "binding case law that answers the question" in his favor. *Bullard v. United States*, 937 F.3d 654, 663 (6th Cir. 2019) (quoting *United States v. Al-Maliki*, 787 F.3d 784, 795 (6th Cir. 2015)). Of course, he has not done this either. Accordingly, we leave discussion of the propriety

three counts to which Anderson pled guilty were grouped under § 3D1.2(d). Under § 1B1.3(a)(2), therefore, Anderson's "relevant conduct" includes "all acts and omissions [that he] committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused," § 1B1.3(a)(1)(A), and which involved "the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2). Anderson's counterfeiting activities prior to June 2019 constituted "the same course of conduct" as his late 2019 and early 2020 counterfeiting if the two were "sufficiently connected or related to each other as to warrant the conclusion that they [were] part of a single episode, spree, or ongoing series of offenses." § 1B1.3(a)(2) cmt. n.5(B)(ii). Alternatively, Anderson's prior counterfeiting made up a "common scheme or plan" with his later counterfeiting if the two were "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." § 1B1.3(a)(2) cmt. n.5(B)(i).

Applying the foregoing Guideline provisions and interpretive comments, we conclude that Anderson committed part of the instant offense while on probation for his 2015 conviction. Anderson's earlier counterfeiting activities involved common accomplices (his co-defendants), a common purpose (the acquisition of cash and valuable items), and an identical modus operandi (passing counterfeit bills at local businesses). § 1B1.3(a)(2) cmt. n.5(B)(i). These uncharged offenses of making and passing counterfeit currency thus made up a common scheme or plan with the conduct for which Anderson was in fact charged, and they therefore constitute relevant conduct under the Guidelines. § 1B1.3(a)(2). Because this relevant conduct occurred before June 2019 (i.e., while Anderson was serving a probationary sentence), the district court properly concluded

---

of application note 4's interpretation of § 4A1.1(d) (now application note 5's interpretation of § 4A1.1(e)) for another day.

that Anderson was subject to a two-point increase in his criminal history score under § 4A1.1(d). The district court therefore did not plainly err.

III.

For the foregoing reasons, we affirm Anderson's sentence.