

Villanova University School of Law

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2006

# USA v. McNeal

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2581

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. McNeal" (2006). *2006 Decisions.* Paper 1277.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1277

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2581

UNITED STATES OF AMERICA

v.

JOHNATHAN McNEAL,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 04-cr-00311-1)
District Judge: Honorable William W. Caldwell

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2006

Before: RENDELL and AMBRO, Circuit Judges,
and SHAPIRO,[*] District Judge

(Opinion filed: April 11, 2006)

OPINION

---

[*] Honorable Norma L. Shapiro, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

SHAPIRO, <u>District Judge</u>

Johnathan McNeal pled guilty to a firearm conspiracy in violation of 18 U.S.C. § 922(d) and (j); he was sentenced to 18 months imprisonment followed by two years of supervised release. McNeal's sentence was premised, in part, on the district judge's finding that McNeal's prior offenses placed him in United States Sentencing Guidelines ("U.S.S.G.") criminal history category III.

McNeal, filing a timely appeal from the final judgment of his sentence, alleged: (1) the district judge erred in calculating his criminal history category because placement in a residential program for delinquent youth is not a "juvenile sentence of confinement" under U.S.S.G. § 4A1.2(d)(2)(A); and (2) the sentence was unreasonable because the district judge did not explicitly articulate consideration of the 18 U.S.C. § 3553(a) factors at the sentencing hearing. We affirm.

## I

McNeal pled guilty and "agree[d] to be sentenced in accordance with the Sentencing Guidelines."[1] App. at 16 (plea agreement). The plea agreement specified the offense level to be recommended to the district judge,[2] but not the criminal history

---

[1]    The Supreme Court decided <u>United States v. Booker</u> on January 12, 2005. 543 U.S. 220. McNeal pled guilty on January 13, 2005. McNeal was sentenced on May 6, 2005. The district judge and the parties were aware that the federal sentencing guidelines were advisory at the time of McNeal's plea and sentencing.

[2]    The government agreed to recommend a base offense level of 12, subject to a two-point enhancement under § 2K2.1(b)(4) because the firearm was stolen. App. at 20, ¶ 10A (plea agreement). According to the probation office, the base offense level was

2

category recommendation.  App. at 20, ¶ 10A.  McNeal did not waive his right to appeal his sentence.  See App. at 17, ¶1 and 20, ¶ 10A.

At sentencing, the district judge considered the presentence investigation report statements that: (1) McNeal was "Adjudicated delinquent" approximately 11 months prior to the instant offense, at the age of 17, for "Recklessly Endangering Another Person, Criminal Mischief" and "Delivery of Marijuana," for which he was "committed to Abraxas Leadership Development Program" ("LDP"); and (2) McNeal was "Released from Abraxas LDP" approximately 4 months  after being "committed" to the LDP, and "Released from supervision" approximately 7 months after the instant offense.  PSI Report at 4, ¶ 22.  The report allocated two criminal history points for this juvenile adjudication under U.S.S.G. § 4A1.2(d)(2)(A)[2] and 4A1.1(b)[3] together, another two

_____

14 and the total offense level was 16.  PSI Report at 3; Addendum to PSI Report at 1. The district judge adopted the probation office's calculation but also credited McNeal with a three-point reduction for acceptance of responsibility, resulting in a total offense level of 13.  App. at 53, ll. 5-7 (sentencing hearing transcript).  McNeal does not challenge the offense level.

    [2]    U.S.S.G. § 4A1.2(d) states:

**(d) Offenses Committed Prior to Age Eighteen**

**(1)**  If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence.
**(2)**  In any other case,
        **(A)**  add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;
                                                                    (continued...)

3

points under § 4A1.1(d)[4], and one point under § 4A1.1(e)[5]. These five criminal history points, all of which stem from the prior juvenile adjudication, together with a separate adult adjudication which added one criminal history point, resulted in a total of six criminal history points and a criminal history category of III.

McNeal's brief challenges only the two criminal history points added under § 4A1.2(d)(2)(A) for an offense committed within five years of a juvenile sentence to confinement of 60 days or more; he denies his commitment to Abraxas LDP is a "juvenile sentence to confinement." McNeal does not specifically challenge the two

---

[2](...continued)
> **(B)** add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

[3]    U.S.S.G. § 4A1.1(a) and (b) state:

**(a)** Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
**(b)** Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

[4]    U.S.S.G. § 4A1.1(d) states:

**(d)** Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

[5]    U.S.S.G. § 4A1.1(e) states:

**(e)** Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.

points added under § 4A1.1(d) for an offense committed while under a criminal justice sentence, including supervised release, or the one-point added under § 4A1.1(e) for an offense committed less than two years after release from imprisonment.

However, the sentencing guidelines at issue are interrelated and all five points stem from the same juvenile adjudication. If McNeal's commitment to the Abraxas LDP was not a "juvenile sentence of confinement," McNeal could not have been on "supervised release" or released from "imprisonment" within two years when he committed the instant offense. See United States v. Davis, 929 F.2d 930, 933 (3d Cir. 1991) ("sentence to confinement" in § 4A1.2(d)(2) has same meaning as "sentence of imprisonment" in related guideline provisions). Had the district judge rejected all five points related to McNeal's juvenile adjudication, McNeal would have qualified for criminal history category I with a guideline range of 12 to 18 months, rather than category III with a range of 18 to 24 months. Because the government recommended a sentence at the "minimum end of the guideline[]" range (App. at 57 (sentencing hearing); App. at 20, ¶ 10 (plea agreement)), McNeal argues the district judge erred in sentencing him to 18 months imprisonment, rather than 12.

## A

The proper interpretation of a federal sentencing guidelines provision is a legal question subject to plenary review. See, e.g., United States v. Jones, 332 F.3d 688, 690-91 (3d Cir. 2003). If a defendant fails to object to the district judge's interpretation, the issue is not properly preserved and is subject only to plain error review. United States v.

5

<u>Olano</u>, 507 U.S. 725, 732 (1993); <u>United States v. Davis</u>, 407 F.3d 162, 164 (3d Cir. 2005).

It is unclear whether McNeal properly preserved the precise issue, i.e., whether placement in the Abraxas LDP is a "juvenile sentence of confinement" under § 4A1.2(d)(2)(A). McNeal's counsel filed written objections only to presentence report paragraphs 19 (adjustment for acceptance of responsibility), 26 (applying § 4A1.1(d)) and 27 (applying § 4A1.1(e)), but failed to object to paragraphs 22 and 25 (applying §§ 4A1.2(d)(2)(A) and 4A1.1(b) together). At the sentencing hearing, McNeal's counsel stated:

> And in the language in 4A1.2[d] refers to an adult or juvenile sentence of confinement which, if an individual goes to a juvenile placement, I can see that would be considered a *confinement* [addressing § 4A1.2(d)(2)(A)], but I don't think you can take the additional leap and find that also is a *criminal justice sentence* [addressing § 4A1.1(d)] or release from *imprisonment* [addressing § 4A1.1(e)]."

App. at 54, ll. 9-15 (emphasis added).

However, because it is well-established that "the term 'sentence to confinement' in Section 4A1.2(d)(2)(A) has the same meaning as the term 'sentence of imprisonment' in the other provisions," such as § 4A1.1(b), (d) and (e), we conclude McNeal adequately preserved the issue on appeal. <u>See</u> <u>Davis</u>, 929 F.2d at 933 ("In all likelihood, the Commission used the term 'confinement' rather than 'imprisonment' in Section 4A1.2(d)(2)(A) simply because that provision applies to juvenile adjudications, as well as some adult adjudications, and the term 'imprisonment' is not customarily used when

6

referring to juvenile adjudications."). Plenary review applies.

**B**

Juvenile adjudications count in a criminal history calculation under the federal sentencing guidelines. See, e.g., United States v. Bucaro, 898 F.2d 368, 373 (3d Cir. 1990) (Pennsylvania law and the guidelines themselves make clear that juvenile adjudications may be considered). A sentence to a juvenile detention institution, or to the custody of a state agency, where a juvenile is not free to leave for more than 60 days is "confinement" or "imprisonment" under § 4A1.2(d)(2)(A) and § 4A1.1(b), (d) and (e) of the sentencing guidelines. See Davis, 929 F.2d at 932 (juvenile sentenced to indeterminate term at "Glen Mills School," where he was not free to leave for more than 60 days, was sentenced to "confinement" or "imprisonment" for the purposes of § 4A1.2(d)(2)(A) and other related provisions, such as § 4A1.1(b), (d) and (e)); see also United States v. Wilson, 41 F.3d 1403, 1404 (10th Cir. 1994) (juvenile's placement in state agency's secure facility for more than 60 days considered "confinement"); United States v. Hanley, 906 F.2d 1116, 1120 (6th Cir. 1990) (same).[6] This is true even if the purpose of the juvenile detention is rehabilitative rather than strictly punitive. United States v. Williams, 891 F.2d 212, 216 (9th Cir. 1989).

---

[6] See also Black's Law Dictionary 298 (6th ed. 1990) (defining "confinement" as the "[s]tate of being confined; shut in; imprisoned; detention in a penal institution"); Webster's New World Dictionary 292 (3d college ed. 1988) (defining "confinement" as "a confining or being confined; *specif.*, a) imprisonment; b) limitation; restriction; restraint").

At the sentencing hearing, the district judge made no factual findings regarding the nature of the LDP, but the presentence report states that McNeal was "[a]djudicated delinquent" and *"committed"* to the LDP. PSI Report at 4, ¶ 22 (emphasis added). The report also states McNeal was *"released"* from the LDP, and later "released from supervision." Id. (emphasis added). The record demonstrates McNeal was not free to leave the LDP residence while committed to it.

McNeal points to language in the Dauphin County Juvenile Probation Office Family Service and Placement Plan ("Placement Plan") to support his argument that the Abraxas LDP is a wilderness "outward bound" rehabilitation program, not a juvenile detention program.[7] Several sections of the Placement Plan do not support this argument:

> (1)     "John was adjudicated delinquent and committed to placement at Abraxas Leadership Development Program (LDP) . . . . *He was ordered to remain on electronic monitoring pending transport to Abraxas . . . .*"
>
> Placement Plan at 1, ¶ 1 (section entitled "Circumstances Necessitating

_____

[7]     The Abraxas LDP is described as follows:

> [A] 15 week outward bound program located in South Mountain, PA, which operates as a short-term therapeutic program focusing on developing and increasing self-confidence, self-esteem, self-discipline, leadership skills, and responsible thinking and goal planning through an intensive treatment model similar to a military style school with an outward bound component. Daily programming includes education, individual counseling, special team groups, drills, ceremony and physical fitness. The goal of the program is for students with [sic] daily process of experimental learning through self-evaluation, to learn to make better decisions and develop refusal skills regarding continuing participation in delinquent activity.

Placement Plan at 3, ¶ 4.

8

Placement") (emphasis added).

(2)     "The institution will provide daily, *supervised* outdoor learning experiences
        . . . and *written progress reports to the Court*."

        Id. at 5, ¶ 9 (section entitled "Service to be provided to Achieve Goals")
        (emphasis added).

(3)     "Because of the nature and mobility of the outward-bound program and the
        short duration of the placement, parental visitation is not feasible."

        Id. ¶ 10 (section entitled "Visitation Plan")

(4)     "The Dauphin County Juvenile Probation Office certifies that the parent
        will be notified of any changes in the visitation plan or the *physical location
        of the child*, when possible."

        Id. ¶ 11 (section entitled "Certification Statement") (emphasis added).

Other materials in the record illustrate the restrictive nature of McNeal's

placement at the Abraxas LDP. These include Abraxas reports entitled "Comprehensive

*Discharge* Summary" (emphasis added) and "Comprehensive Treatment Plan"

("Treatment Plan"). The Treatment Plan describes Abraxas as a "residential, military-

structured rehabilitation facility for *adjudicated* male youth." Treatment Plan at 1

(emphasis added). In addition, the Dauphin County Juvenile Probation Office Placement

Review Hearing Report ("Placement Review") states: "[i]n order for John to *return to the

community* he must complete the following goals: 1) continue to follow all rules,

regulations, and expectations of the Abraxas LDP Program; 2) complete the third phase of

the Abraxas LDP Program . . .; and 3) . . . participat[e] in the program fully up until the

day of his graduation." Placement Review at 4, ¶ 8 (emphasis added).

9

The language in the presentence report, Placement Plan, LDP reports, and Placement Review makes clear that McNeal was not free to leave the LDP for the duration of his 4-month commitment. The district judge properly treated McNeal's commitment to Abraxas LDP as a sentence of "confinement" or "imprisonment" that added five criminal history points under § 4A1.2(d)(2)(A) and § 4A1.1(b), (d) and (e) of the sentencing guidelines.

## II

McNeal alleges the district judge's failure to articulate his consideration of the 18 U.S.C. § 3553(a) sentencing factors makes the sentence unreasonable under United States v. Booker, 543 U.S. 220, 263-64 (2005). See also United States v. Cooper, 437 F.3d 324, 326-27 (3d Cir. 2006). McNeal did not object to the district judge's failure to state reasons for his sentence; the issue is therefore not properly preserved but is subject to plain error review. Olano, 507 U.S. at 731-32; Davis, 407 F.3d at 164. Plain error occurs "[w]here a defendant demonstrates error that is plain, and that affects substantial rights" and "where the fairness, integrity, or public reputation of judicial proceedings was affected." Davis, 407 F.3d at 164 (internal quotations and citation omitted).

In describing reasonableness review, the Supreme Court stated, "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." Booker, 543 U.S. at 261. The § 3553(a) factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the

10

defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the sentencing range under the guidelines; (5) pertinent policy statements; (6) the need to avoid unwarranted sentence disparities among similar defendants; and (7) the need to provide restitution to the victim. 18 U.S.C. § 3553(a). Booker does not require explicit analysis of the § 3553(a) factors:

> The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. The court need not discuss every argument made by a litigant if an argument is clearly without merit. *Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing.* Nor will we require district judges to routinely state by rote that they have read the Booker decision or that they know the sentencing guidelines are now advisory.

United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006) (citations omitted) (emphasis added).

The record demonstrates that the court took the § 3553(a) factors into account in sentencing. With regard to the nature and circumstances of offense, Judge Caldwell stated: "I think Mr. McNeal's role here was to introduce people who were dealing weapons. . . . [H]e was dealing with people who were knowingly dealing with stolen firearms." App. at 59, ll. 8-10, 16-18. With regard to the history and characteristics of defendant, Judge Caldwell stated: "[McNeal's juvenile offense] sounds serious to me. . . . He was carrying a gun at age 18. He fired a gun, maybe not at anybody, at age 17. And here he is at age 20 or 21 . . . before me on this unfortunate case." Id., ll. 2, 18-23.

With regard to the need for sentence imposed, the district judge received detailed testimony from McNeal's father, and stated:

11

I am impressed with Johnathan's turn-around since, when was it, January of this year. And I think he is making an effort to get himself straightened out. The case [defense counsel] cited, I think, indicates that post-offense conduct can shed significant light on the genuineness of claimed remorse. And it seems to me that this young man's conduct since January has been positive.

App. at 52-53, ll. 23-5.

With regard to the kinds of sentences available and the sentencing range, Judge Caldwell analyzed the presentence report, App. at 50-59, received testimony from defendant, App. at 60, decided to sentence defendant to 18 months imprisonment, App. at 61-62, and concluded, "[t]he sentence imposed, in my mind, satisfies the purposes set forth in 18 U.S.C. 3553(a)." App. at 62, ll. 8-9. Judge Caldwell also discussed the need to avoid unwarranted sentence disparities among similar defendants: "I don't think that the situation enables me to go outside what the guidelines are in comparison to other defendants." App. at 59, ll. 23-25.

In light of the record and the deferential standard of review, it is clear that the district judge considered the sentencing factors under 18 U.S.C. § 3553(a), as required by Booker and Cooper. McNeal's sentence is affirmed.