# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3471

_____

United States of America,

        Appellee,

v.

Nathan Lamar Stewart,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: May 11, 2011
Filed: June 27, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Nathan Lamar Stewart pleaded guilty to three counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and one count of aiding and abetting the use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). On its way to imposing a sentence of 204 months' imprisonment, the district court[1] determined that Stewart had a total of sixteen criminal-history points, including nine points resulting from juvenile sentences. Stewart appeals, arguing that the district court assessed too many points for his juvenile sentences because they were not, as

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

the district court concluded, "sentence[s] to confinement," see U.S. Sentencing Guidelines Manual (U.S.S.G.) § 4A1.2(d)(2)(A) (2009). We affirm.

## I.

Stewart was eleven years old when he was first sentenced to a correctional facility. He had threatened his brother with a knife and then a "replica" gun during a dispute over a video game. As a result, Stewart was adjudicated delinquent for misdemeanor assault and sent to the "Bar None" juvenile facility in Anoka, Minnesota.

In the seven or so years that followed, leading up to his eighteenth birthday, Stewart was sentenced for two more misdemeanor assaults, one felony assault, one instance of disorderly conduct, and one act of criminal sexual conduct. All told, by the time he turned eighteen, Stewart had committed seven[2] offenses, each one involving physical violence.

At Stewart's sentencing in this case, the district court evaluated each of Stewart's juvenile sentences and concluded that five of the seven yielded criminal-history points. Two of the sentences were excluded because they were too old. See U.S.S.G. §§ 4A1.2(d)(2) and (e)(4). Of the remaining five, the district court concluded that four of them were "sentence[s] to confinement of at least sixty days," worth two points each, see U.S.S.G. § 4A1.2(d)(2)(A), while the remaining one was not a "sentence to confinement" and so was worth only one point, see U.S.S.G. § 4A1.2(d)(2)(B).

---

[2]There was—in addition to the offenses listed above—another instance of disorderly conduct, committed when Stewart was ten years old.

Citing our decisions in United States v. Allen, 64 F.3d 411 (8th Cir. 1995) (per curiam), and United States v. Morgan, 390 F.3d 1072 (8th Cir. 2004), the district court reasoned that the key factor in identifying a "sentence to confinement" is the defendant's "physical confinement without being free to leave," Sentencing Tr. at 4:4-15. It then heard testimony on the conditions at the juvenile facilities to which Stewart had been sentenced and found that two of them—Bar None and the Hennepin County Home School—met that standard. See id. at 11:5-12:10. Because Stewart had served four of the five sentences at those two facilities, and had served "at least sixty days" each time, the district court concluded that those four sentences yielded two points each. See U.S.S.G. § 4A1.2(d)(2)(A). The fifth sentence—served at Glen Mills juvenile facility—yielded only one point because, the district court found, Stewart was "not being physically confined [while at Glen Mills] and he was free to leave." Sentencing Tr. at 8:3-6, 11:5-10; see U.S.S.G. § 4A1.2(d)(2)(B).

The district court therefore concluded that Stewart had nine criminal-history points as a result of his juvenile sentences. It added those points to the four assessed as a result of Stewart's adult convictions, the two assessed for Stewart having committed the robberies while still under sentence for another offense, and the one assessed for the recency of the robberies to one of Stewart's previous offenses, to arrive at a total of sixteen points. Pairing that with Stewart's total offense level of twenty-seven, the district court computed a guidelines range of 130 to 162 months' imprisonment for the bank robberies. It then sentenced Stewart to 204 months' imprisonment: 120 months for the bank robbery offenses, which included a downward departure of ten months for what the district court viewed as the guidelines calculation's "substantial[] overrepresent[ation] [of] the seriousness of [Stewart's] criminal history," Sentencing Tr. at 18:1-6; and 84 months for the firearm offense, the statutory minimum.

On appeal, Stewart argues that his juvenile placements, which he describes as "home schools that [he] attended," Appellant's Br. at 16, were not "sentence[s] to

confinement" because they were not tantamount to "imprisonment," U.S.S.G. § 4A1.1(b), or "incarceration," U.S.S.G. § 4A1.2(b)(1). He asks that we vacate his sentence and remand the case to the district court for resentencing.

## II.

"We review the sentencing court's factual findings for clear error and its application of the Guidelines to those facts de novo." United States v. Morgan, 390 F.3d 1072, 1073 (8th Cir. 2004).

U.S. Sentencing Guidelines Manual § 4A1.1 governs the assessment of a defendant's criminal history points. Each of the defendant's prior sentences is examined and, depending on its severity and other factors, is assigned a point value. See U.S.S.G. § 4A1.1. The sum of these individual point values "determine[s] the criminal history category in the Sentencing Table." Id. Although § 4A1.1 provides the architecture for totaling criminal-history points, it depends on definitions and instructions contained in § 4A1.2 for the computation of the points to be assessed for any particular sentence. See U.S.S.G. § 4A1.1 cmt.[3]

A special subsection, § 4A1.2(d)(2), deals with juvenile sentences. Part (A) of that subsection provides: "add 2 points under § 4A1.1(b) for each . . . juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense." U.S.S.G. § 4A1.2(d)(2)(A). Part (B) continues: "add 1 point under § 4A1.1(c) for each . . .

---

[3]Parts (A) and (B) of § 4A1.2(d)(2) correspond to, respectively, parts (b) and (c) of § 4A1.1. As the commentary explains: "The total criminal history points from § 4A1.1 determine the criminal history category (I-VI) in the Sentencing Table. . . . The definitions and instructions in § 4A1.2 govern the computation of the criminal history points. Therefore, §§ 4A1.1 and 4A1.2 must be read together." U.S.S.G. § 4A1.1 cmt.

juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A)." U.S.S.G. § 4A1.2(d)(2)(B). Other juvenile sentences are not counted.[4]

In order to determine whether a sufficiently recent juvenile sentence is counted under part (A), and is therefore assigned two points, or instead is counted under part (B), and is assigned only one point, a district court must determine whether the prior sentence was a "sentence to confinement of at least sixty days." U.S.S.G. § 4A1.2(d)(2)(A). "[S]entence to confinement" is not, however, defined in the guidelines.

We reject at the outset Stewart's suggestion that state law supplies the definition of "confinement." It makes no difference whether "'home school' is an intermediate sanction" under Minnesota law,[5] less severe than the "separate option" of "turning him over to the Commissioner of Corrections," Appellant's Br. at 17; see Minn. Stat. § 260B.198, subds. 1(3)(iv) and 1(4), because "[w]hether a prior sentence counts for criminal history purposes is a question of federal, not state law," Morgan, 390 F.3d at 1074. The question is not whether Minnesota considers a sentence to be confinement, but rather whether the guidelines consider it to be so. "State law is relevant only to the extent that it describes the pertinent details of a defendant's prior sentence." Id.

The district court, looking to our decisions in Allen and Morgan, reasoned that a juvenile sentence qualified as a "sentence to confinement" if the juvenile was

---

[4]If, however, the juvenile defendant was "convicted as an adult and received a sentence of imprisonment exceeding one year and one month," it is counted under §§ 4A1.1(a) and 4A1.2(d)(1).

[5]All of Stewart's juvenile sentences were imposed by courts in Minnesota.

"physically confined and not free to leave." Sentencing Tr. at 11:5-10. We agree with this analysis.

The guidelines appear not to draw much, if any, distinction between "confinement" and "imprisonment" for the purposes of calculating the criminal-history points assessed for juvenile sentences. See also, e.g., U.S.S.G. § 4A1.1 cmt. n.5 (using the terms interchangeably). Part (b) of § 4A1.1, which, as noted above, corresponds to Part (A) of § 4A1.2(d)(2), prescribes two points "for each prior sentence of *imprisonment* of at least sixty days." U.S.S.G. § 4A1.1(b) (emphasis added).[6] Both the commentary to § 4A1.1(b) as well as the text of § 4A1.2(d)(2)(A) explicitly contemplate that juvenile sentences qualifying under § 4A1.2(d)(2)(A) will be counted under § 4A1.1(b). See id. cmt. n.2. But neither that statement in the commentary, nor § 4A1.2(d)(2)(A), uses the phrase "sentence of imprisonment" to describe a juvenile sentence—they instead describe it as "confinement." Whatever the reason for the difference in terminology, we think it obvious that the guidelines instruct district courts to count certain juvenile sentences "to confinement" under § 4A1.2(d)(2)(A) as sentences "of imprisonment" under § 4A1.1(b).

We recognized exactly this in Allen, in which we rejected an argument that juvenile sentences to "confinement" under § 4A1.2(d)(2)(A) should not be counted as sentences of "imprisonment" under §§ 4A1.1(b) and (e). 64 F.3d at 412-13. There we observed that whatever differences may exist between "juvenile 'confinement'" and "adult 'imprisonment,' it is clear that juvenile sentences are considered in calculating criminal history." Id. at 413. That is the very purpose of § 4A1.2(d)(2). Accordingly, we concluded that a juvenile sentence served at a training school, where the juvenile "was confined and was not at liberty to leave at will," was a sentence of "imprisonment" under §§ 4A1.1(b) and (e).

_____

[6]"[S]entence of imprisonment" is defined in § 4A1.2(b)(1) as a "sentence of incarceration."

Later, in Morgan, we applied this same standard to conclude that adult placement in a probation "violator's program" qualified as a prior sentence of imprisonment under §§ 4A1.1(b) and (e). 390 F.3d at 1074. Citing Allen and noting that "[p]hysical confinement without being free to leave is a key factor in determining whether a sentence is one of incarceration," we concluded that placement in a facility resulting in "significant restraints on [] liberty," including the "most important aspect" of "not [being] free to leave," counted as "incarceration" under the guidelines. Id.

Here the district court made that key inquiry: Was Stewart physically confined without being free to leave while sentenced to the Bar None, Hennepin County Home School, and Glen Mills juvenile facilities? And it heard uncontested testimony that Stewart was confined and not free to leave while at Bar None and the Hennepin County Home School, but was not so confined while at Glen Mills.[7] Accordingly, its findings to that effect are not clearly erroneous and, furthermore, are sufficient to support the assignment of the criminal history points.[8]

III.

The sentence is affirmed.

———————————————

[7]That Stewart was not free to leave while at Bar None and the Hennepin County Home School made those stays qualitatively different from "residency in a halfway house," which is not considered "confinement" under § 4A1.1. See U.S.S.G. § 4A1.1 cmt. background; id. § 3A1.2 cmt. n.4 ("'Custody or control' includes 'non-secure custody', i.e., custody with no physical restraint[, f]or example, . . . if the defendant . . . is in custody at a community corrections center, community treatment center, 'halfway house', or similar facility.").

[8]Contrary to the allegations set forth in Stewart's letter to us, the record reveals that the district court was aware of and considered Stewart's mental-health diagnoses in selecting a sentence. See Sentencing Tr. at 40:19-22.