*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DARRON DEON HOWARD,
                *Petitioner-Appellant*,

    *v.*

UNITED STATES OF AMERICA,
                *Respondent-Appellee*.

No. 13-1602

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 1:06-cr-00126-1; 1:10-cv-00163—Paul Lewis Maloney, Chief District Judge.

Decided and Filed: February 20, 2014

Before: MOORE, SUTTON, and STRANCH, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Brian P. Lennon, Elinor R. Jordan, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellant. Sally J. Berens, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant, Darron Deon Howard, has been involved with the criminal-justice system since he was eleven years old. When he pleaded guilty to violating 18 U.S.C. § 922(g)(1) in 2006, his many run-ins with the law resulted in a rather high criminal-history score. At sentencing, his counsel objected to several of the Presentence Investigation Report's ("PSR") assignments of criminal-history points for some of Howard's juvenile offenses. The district court sustained two of the objections, leaving Howard in Criminal History Category V and with a guidelines-recommended range of 130 to 162 months of

1

imprisonment. The district court sentenced Howard to the statutory maximum of 120 months of imprisonment. Since then, Howard has filed a petition under 28 U.S.C. § 2255 alleging that his counsel's failure to object to the PSR's award of two criminal-history points in Paragraph 38 rendered his representation constitutionally deficient. The district court denied his petition.

Howard's allegations of attorney misconduct and incompetence are troubling, and if proven true, they would usually support a finding of constitutionally deficient performance. In this case, however, we cannot say that the attorney's representation of Howard ran afoul of the Sixth Amendment's basic protections. An objection to Paragraph 38 would have been futile, and Howard has not explained how his sentence would be different but for the other misconduct he alleges. Therefore, we **AFFIRM** the district court's denial of Howard's § 2255 petition.

## I. BACKGROUND

Early in the morning of February 3, 2006, witnesses reported to the police that a fight had broken out near 77 Grandville Avenue, SW, in Grand Rapids, Michigan. These tipsters claimed that an individual was armed with a handgun and pointing it at people in the vicinity of the altercation. Several officers responded. At the scene, they noticed a young man matching the description given by the concerned callers and approached. The officers identified themselves, and the individual fled. Mid-flight, he tossed a handgun underneath a nearby parked car. Several officers gave chase, and one tackled the suspect to the ground. After placing him in handcuffs, the police learned that the subdued suspect was Howard. Underneath the parked car, the officers found a cocked and fully loaded .32-caliber revolver.

Due to a previous felony conviction, Howard could not own or possess a firearm. Accordingly, a federal grand jury indicted him for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Howard initially pleaded guilty pursuant to a plea agreement, *see* R. 21 at 7 (Plea Agreement) (Page ID #39), but at the defendant's request, the district court vacated the plea prior to sentencing, *see* R. 29 at

1 (D. Ct. Order Vacating Plea) (Page ID #74).  A few months later, on the eve of trial, Howard changed his mind and pleaded guilty without the benefit of an agreement.  R. 47 at 11:16 (Change of Plea Hr'g Tr.) (Page ID #163).  The district court accepted his plea.  R. 46 at 1 (D. Ct. Order Accepting Plea) (Page ID #152).

During this sequence of events, the United States Probation Office prepared a PSR.[1]  The PSR recommended a sentence of 120 months of imprisonment—the statutory maximum.  PSR at 17 ¶ 73.  At this time, Howard was twenty-one years old, yet the probation office assigned him thirteen criminal-history points—placing him in Category VI—due in large part to his juvenile record.

This record begins early, and it is extensive.  In the PSR, it spans twelve paragraphs over seven pages.  Only Paragraph 38 is relevant to this appeal.  In that paragraph, the probation office assigned Howard two criminal-history points for an adjudication that happened on October 11, 1996.  *Id.* at 8 ¶ 38.  At that time, Howard was eleven years old, and a probate judge found him delinquent for committing retail fraud and unarmed robbery.  *Id.*  He received probation.  *Id.*  Generally, this long-ago offense would not be factored into Howard's criminal-history score because he received only probation and it happened nearly a decade before his felon-in-possession offense. *See* U.S.S.G. § 4A1.2(d)(2) (2006) (allowing for the assignment of criminal-history points only if a juvenile sentence was imposed within five years of the instant offense).[2]

This early brush with the criminal-justice system, however, did not set Howard straight.  A few months later, he violated his probation by maliciously destroying a building.  PSR at 8 ¶ 38; 10 ¶ 39.  The probate court extended his probation.  *Id.* at 8 ¶ 38.  In 1998, Howard violated curfew and repeatedly failed to comply with the terms of his probation.  *Id.*  As a result, the probate judge placed him first on a tether, then removed him from his mother's home, and eventually ordered him to Kokomo Academy, a boys' school in Indiana.  *Id.* at 9 ¶ 38; R. 95 at 15:15–24 (Remand Hr'g Tr.) (Page ID

---

[1]The Probation Office revised the initial PSR.  All references in this opinion are to the final version of the PSR issued on March 6, 2007.

[2]The Probation Office used the 2006 version of the United States Sentencing Guidelines.  All subsequent references are to this version of the guidelines.

#452). In 1999, due to continued probation violations, the probate judge ordered Howard to the Muncie Reception and Diagnostic Center in Muncie, Indiana. PSR at 9 ¶ 38; R. 95 at 16:8–10 (Remand Hr'g Tr.) (Page ID #453); R. 108 at 44–45 (Juvenile Records) (Page ID #699–700). In 2000, police officers arrested Howard for possessing marijuana, giving false information to a police officer, and trespassing—all in violation of his probation. PSR at 9 ¶ 38; 10 ¶ 41. For these offenses, the probate judge ordered Howard to the Glen Mills School for twelve to eighteen months. *Id.* at 9 ¶ 38. Later in 2000, police caught Howard driving a stolen vehicle while on leave from Glen Mills, and during another leave, Howard absconded and provided false information to a police officer again. *Id.* For these offenses, the probate judge continued Howard's probation, and he remained at Glen Mills until October 17, 2002. *Id.* Due to Howard's repeated violations, the probate court kept extending his original probation several years. Because the last condition of Howard's probation—being ordered to Glen Mills—was a sentence to confinement within five years of his felon-in-possession offense, the probation office assigned him two criminal-history points pursuant to U.S.S.G. § 4A1.2(d)(2)(A).

At the sentencing hearing, Howard's counsel took issue with the PSR's scoring of Howard's criminal history. In particular, counsel objected to the awarding of one point each for Malicious Destruction of a Building (Paragraph 39), Possession of Marijuana (Paragraph 41), and Unlawful Driving Away of an Automobile (Paragraph 42).[3] R. 55 at 8:21 (Sent. Hr'g Tr.) (Page ID #209). Counsel argued that each of these offenses occurred more than five years before Howard's felon-in-possession offense. *Id.* at 8:13–11:19 (Page ID #209–12). The district court sustained the objections to Paragraphs 39 and 41; it overruled the objection to Paragraph 42. *Id.* at 14:9–19 (Page ID #213). As a result, Howard's criminal-history category fell to Category V. When combined with the offense level of 28, this new category resulted in a guidelines range

---

[3]In Howard's sentencing memorandum, his counsel objected to Paragraphs 38, 40, and 41. R. 27 at 2 (Sent. Mem.) (Page ID #69). However, as noted, the probation office revised the PSR. Even though this revision occurred prior to Howard's attorney filing the sentencing memorandum, it appears that the attorney referenced paragraphs using the numbers assigned in a prior version of the PSR. *See* R. 55 at 8:21–23 (Sent. Hr'g Tr.) (Page ID #207). References in the text of this opinion are to the relevant paragraphs in the revised PSR issued on March 6, 2007.

of 130 to 162 months of imprisonment.  U.S.S.G. § 5A (Sent. Table); 18 U.S.C. § 922(g)(1).  The district court sentenced Howard to 120 months of imprisonment—the statutory maximum and the guideline range.  R. 55 at 46:12–16 (Sent. Hr'g Tr.) (Page ID #245).

Howard appealed, and we affirmed his sentence.  *United States v. Howard*, 301 F. App'x 446 (6th Cir. 2008).  In February 2010, Howard filed for relief under 28 U.S.C. § 2255, arguing that the district court erred by including the offenses listed in Paragraphs 38, 42, and 43 in his criminal-history score and that his counsel's performance was constitutionally deficient for failing to make timely objections to the inclusion of these offenses.  R. 60 at 4–6 (28 U.S.C. § 2255 Pet.) (Page ID #263–65).  The district court denied this petition, Howard's request for an evidentiary hearing, and a certificate of appealability.  R. 72 at 15 (D. Ct. 2010 Op. & Order) (Page ID #366).  We reversed, holding that the district court abused its discretion by refusing to hold an evidentiary hearing.  *Howard v. United States*, 485 F. App'x 125, 129 (6th Cir. 2012).

On remand, the district court conducted the hearing.  The testimony focused on the Glen Mills School and whether Howard's ordered attendance qualified as a "sentence to confinement."  U.S.S.G. § 4A1.2(d)(2)(A).  Howard's mother testified that she recommended the program to the probate judge after seeing it featured on the television program *20/20*.  R. 95 at 17:9–35 (Remand Hr'g Tr.) (Page ID #454).  John Aulisa, the school's admissions coordinator, explained that Glen Mills's campus is "very similar to a small private college" and that Howard's living quarters were "similar to a dorm room."  *Id.* at 27:1–13 (Page ID #464).  On cross-examination, he did acknowledge that "[o]ne hundred percent" of the program's students were adjudicated delinquent and that students could leave the facility only on a home pass, which needed to be granted by a court "probably 99 percent of the time."  *Id.* at 28:5–8, 34:11–12 (Page ID #465, 471).  Howard, himself, stated that the program required him to take urinalysis and breathalyzer tests.  *Id.* at 46:5–6 (Page ID #483).  He also testified that he directed his trial counsel to object to Paragraph 38, pointing out that the original offense happened

in 1996—well before the five-year period considered for criminal-history points.  *Id.* at 54:10–55:5 (Page ID #491–92).

After the hearing, the district court denied Howard's § 2255 petition for a second time.  The court decided that there was no error in assigning two criminal-history points under U.S.S.G. § 4A1.2(d)(2)(A) for the conduct described in Paragraph 38.  Specifically, the court found—as a matter of fact—that "Howard was not free to leave Glen Mills" and, therefore, Glen Mills qualified as confinement.  R. 102 at 7 (D. Ct. 2013 Op. & Order) (Page ID #587).  It also rejected the argument that the probate judge's "placement" of Howard at Glen Mills—as opposed to her "commitment" of Howard to the program—allowed Howard to escape the reach of U.S.S.G. § 4A1.2(d)(2)(A).  *Id.* at 5–6 (Page ID #585–86).  Thus, finding no error in the computation of Howard's criminal-history score, the district court refused to conclude that Howard's attorney provided deficient representation by not objecting to the PSR's award of two criminal-history points for the conduct detailed in Paragraph 38.  The district court granted a certificate of appealability, and Howard now appeals.

## II.  STANDARD OF REVIEW

"On appeal from the denial of a § 2255 motion, we review legal conclusions de novo and factual findings for clear error."  *Regalado v. United States*, 334 F.3d 520, 523–24 (6th Cir. 2003) (citing *Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999)).  "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)).

## III.  ANALYSIS

On appeal, Howard asks us to vacate his sentence because he allegedly received constitutionally deficient representation in violation of the Sixth Amendment.  His challenge takes two forms:  one, Howard argues that his trial counsel provided

ineffective assistance when he failed to object to the two criminal-history points assessed in Paragraph 38 of the PSR. Two, Howard claims that his counsel failed to communicate with him and to investigate potentially meritorious claims—both violations of counsel's ethical and professional responsibilities.

Claims such as these are governed by the familiar framework established in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must make two showings to qualify for relief: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "An attorney's performance is deficient if 'counsel's representation fell below an objective standard of reasonableness,'" meaning "'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 667, 668)). Deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is less than a preponderance of the evidence, as 'a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.'" *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 693). We address each argument in turn.

## A.  Failure to Object

Howard's primary argument is that his counsel provided ineffective assistance by failing to object to Paragraph 38 of the PSR, which awarded Howard two criminal-history points. Howard maintains that a reasonable and competent lawyer would have made a timely objection, which would have been sustained because Howard was not sentenced or committed to Glen Mills. Regarding prejudice, he rightly points out that the subtraction of two points would have placed him in Category IV. This lower criminal-history category would have resulted in a guidelines-recommended sentencing range of 110 to 137 months of imprisonment.

Certainly, an attorney's failure to object to an error in the PSR's calculation of the guidelines—if left uncorrected by the district court—can be grounds for finding deficient performance. *See, e.g.*, *Harris v. United States*, 204 F.3d 681, 682–83 (6th Cir. 2000); *Arredondo v. United States*, 178 F.3d 778, 787–88 (6th Cir. 1999); *see also Hodge v. Hurley*, 426 F.3d 368, 385–89 (6th Cir. 2005) (holding that a defense counsel's failure to object to prosecutorial misconduct was ineffective assistance); *Washington v. Hofbauer*, 228 F.3d 689, 709 (6th Cir. 2000) (same). The problem here, however, is that Howard's counsel did not commit an error by failing to make an objection to Paragraph 38, let alone one sufficient to offend the Sixth Amendment.

The probation office awarded Howard two criminal-history points in Paragraph 38 pursuant to U.S.S.G. § 4A1.2(d)(2)(A). This subsection of the guidelines directs a court to

> add **2** points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense[.]

Howard claims that his time at Glen Mills does not qualify as a "sentence to confinement," and therefore, the district court erred by applying this guideline. In particular, Howard focuses on how he came to stay at Glen Mills. He argues that the probate judge "placed" him at Glen Mills, making his stay a condition of probation rather than "the direct result of an adjudication of guilt." Pet'r Br. at 17. Because his attendance at Glen Mills was only a condition of probation, Howard reasons, the district court should have ignored his time there, placing the consequences of his 1996 retail-fraud and unarmed-robbery adjudications outside the five-year consideration period. And thus, under this theory, Paragraph 38 would not count toward his criminal-history score.

Up to this point, our decisions interpreting § 4A1.2(d)(2)(A) have rarely addressed this line of argument, focusing instead on whether the facility to which the court directed the juvenile to report qualified as "confinement." *See, e.g.*, *United States*

*v. Williams*, 176 F.3d 301, 311 (6th Cir. 1999); *see also United States v. McNeal*, 175 F. App'x 546, 549 (3d Cir. 2006). In one of our few cases relevant to Howard's challenge on appeal, *United States v. Hanley*, 906 F.2d 1116 (6th Cir. 1990), we held that a "*commitment* to a juvenile facility" qualified as a sentence to confinement. *Id.* at 1120 (emphasis added). And since then, a "steady stream of our caselaw" has reaffirmed this holding. *United States v. Hall*, 279 F. App'x 359, 367 (6th Cir. 2008); *see also id.* at 368 (collecting cases). But these decisions do not necessarily answer the main question in this case: was Howard's placement at Glen Mills the result of an adjudication of guilt and a *sentence to* confinement?

Howard latches onto *Hanley*'s use of the word "commitment" and seeks to distinguish "placement"—the term used by the state probate judge—from "commitment" and "sentence." *See* Pet'r Br. at 14–16. He argues that his stay at Glen Mills was the result of his being a ward of the court and not because of an adjudication of guilt. In support, he marshals citations to Michigan legal publications, excerpts from his juvenile records, and snippets of testimony from his remand hearing. Ultimately, though, the district court is correct—at least on the facts of this case—that this is a distinction without a difference. *See* R. 102 at 5 (D. Ct. 2013 Op. & Order) (Page ID #585).

In this context, a "sentence" is "the judicial determination of the punishment to be inflicted on a convicted criminal." *Random House Unabridged Dictionary* 1745 (2d ed. 1993). Or it can be the "[j]udgment of [a] court formally advising [the] accused of [the] legal consequences of guilt [for] which he has confessed . . . ." *Black's Law Dictionary* 1362 (6th ed. 1990). Both definitions encompass a wide range of judicial action, but common to each one is the notion of adjudication, the recognition by a judicial body of punishable wrongdoing by the juvenile. In a similar vein, a "commitment" is "a consignment to a penal or mental institution," *Merriam Webster's Collegiate Dictionary* 231 (10th ed. 1995), or "a written order of a court directing that someone be confined in prison," *Random House Unabridged Dictionary* 412 (2d ed. 1993). Again, adjudication—or something similar—is inextricably linked with the term "commitment."

"Placement" is trickier. Adjudication could be a precondition for a placement, such as when we say that a felon was placed in a maximum-security prison. But "placement" is a malleable and ubiquitous word, one susceptible to many meanings. Adjudication is not always necessary to place a child in a group home, for instance, or to secure a placement for a child with a foster family. Accordingly, the use of the word "placement" itself, as opposed to "commitment" or "sentence," does not resolve the issue in play. It is not enough to focus on whether a juvenile court uses particular magic words when sending a juvenile to a facility like Glen Mills. Nor is it enough to see if a juvenile's bad behavior resulted in him being confined. The focus of our attention must be on whether a child's confinement is the direct legal consequence, as determined by a judicial body, of wrongdoing.

Under this standard, we conclude that Howard's stay at Glen Mills was part of a sentence to confinement. From 1996, when Howard committed retail fraud and unarmed robbery, until 2002, Howard was on probation and a temporary ward of the Kent County Probate Court. *See* R. 108 at 14, 60 (Juvenile Record) (Page ID #669, 715). Each time he committed an offense, whether it was for maliciously destroying a building or possessing marijuana, he violated that original probation. *See, e.g.*, *id.* at 58–59 (Page ID #713–14) (showing that Howard pleaded guilty to maliciously destroying a building and was continued on probation as a result). Each time, the probate court ordered probation continued, and it ordered new sanctions. *See, e.g.*, *id.* at 58 (Page ID #713) (requiring Howard to make restitution, to attend counseling, and to be placed on a tether). By 2000, after Howard pleaded guilty to possessing marijuana, in violation of his probation and the laws of Michigan, the probate court ordered him to Glen Mills. *Id.* at 34–38 (Page ID #689–93). The probate court used the word "placed," as it did at various points throughout its orders of disposition. *Id.* at 34 (Page ID #689). No matter the exact word used, however, it is clear from the record that being sent to Glen Mills was the legal consequence for Howard of his continued probation violations and possession of marijuana. Thus, Howard's placement at, or commitment to, Glen Mills was a sentence to confinement within the meaning of U.S.S.G. § 4A1.2(d)(2)(A).

Howard's arguments to the contrary are unconvincing. First, he claims that there is a distinction between placement and commitment under Michigan law, which demonstrates that his stay at Glen Mills was not part of a sentence to confinement. Pet'r Br. at 15 (citing Tobin L. Miller, *Juvenile Justice Benchbook* § 12.8 (2d ed. 1998)). This argument is not persuasive for multiple reasons. One, whether Howard's stay at Glen Mills was part of a sentence to confinement is a question of federal law. *Williams*, 176 F.3d at 311. As explained above, under our interpretation of § 4A1.2(d)(2)(A), Howard's stay qualifies. Two, nothing in the Michigan statutes or the *Juvenile Justice Benchbook* explains the legal distinction between "placement" and "commitment" to indicate that the probate court consciously chose to use the one term and not the other. As Howard himself admitted, the words appear interchangeably throughout his juvenile record. *See* R. 96 at 10–11 (Pet'r Post-Hr'g Br.) (Page ID #512–13). Accordingly, we see no reason to depart from our analysis above.

Second, Howard claims that he was not sentenced to confinement because the probate court ordered him to Glen Mills at the urging of his mother and not as a response to his various violations. Pet'r Br. at 20. The record contradicts this theory: the order of disposition placing Howard at Glen Mills states that "it is adjudicated and ordered that the plea admitting the allegations of the petition . . . be accepted." R. 108 at 34 (Juvenile Records) (Page ID #689). Only then does it go on to order Howard to Glen Mills. We certainly hope that juvenile courts act to put their temporary wards in the most beneficial of situations, but given these statements, it is inconceivable that the probate court ordered Howard to Glen Mills solely "for his own betterment" and not as a legal consequence for one of his many violations.[4] Pet'r Br. at 20. Furthermore, that the probate court acceded to the recommendation of Howard's mother does not change the fact that he attended Glen Mills as part of a sentence to confinement any more than a

---

[4]Throughout our opinion, we focus on Howard's many juvenile violations. It should also be noted that Howard has made good use of his time so far in prison. In his briefing before this court, Howard's counsel notes that Howard has earned an Associate's Degree from Indiana State University, been named to multiple honor societies, and participated in a drug-recovery program. *See* Pet'r Br. at 24. If Howard were ever resentenced, these facts would be ripe for consideration pursuant to *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011).

district court's recommendation of a certain correctional facility makes a defendant's term of imprisonment anything but incarceration.

Third, Howard argues that the district court's failure to award two points under § 4A1.2(d)(2)(A) for his stays at Kokomo Academy and the Muncie Reception and Diagnostic Center demonstrates that his time at Glen Mills was not a sentence to confinement. There is a relatively easy explanation for this distinction: Howard attended Kokomo Academy and the Muncie Center more than five years before being charged as a felon in possession. Therefore, under § 4A1.2(d)(2)(A), it would be error for a court to consider those stays for criminal-history purposes.

Fourth, Howard cites our sister circuit's decision in *United States v. Stewart*, 643 F.3d 259, 263–64 (8th Cir. 2011), which upheld, as not clearly erroneous, a district court's finding that a juvenile was not confined while attending Glen Mills. Howard urges us to follow that decision, but in doing so, he overlooks several key points. To start, determining whether a juvenile's attendance at a facility qualifies as confinement is a fact-intensive inquiry. In *Stewart*, the Eighth Circuit noted that the district court had "heard uncontested testimony" that the juvenile had been free to leave, which was not the case here. *Id.* at 264. The district court in this case heard testimony from multiple witnesses and considered multiple exhibits describing Glen Mills and Howard's inability to leave the campus of his own free will. Given this information, the district court determined that Howard was confined at Glen Mills. We cannot say firmly, at least on the record before us, that that decision was a mistake. Moreover, as the government notes, the Eighth Circuit decided *Stewart* several years after Howard's sentencing, and therefore, it was unavailable for Howard's attorney to consult at the time of Howard's sentencing. In short, neither the logic nor the existence of *Stewart* convinces us that Howard's attorney erred in not objecting to Paragraph 38. Without finding error, we cannot hold that counsel's silence regarding Paragraph 38 violated Howard's Sixth Amendment rights.

**B. Failure to Communicate and Investigate**

Howard's second argument, which is largely derivative of his first one, is that his counsel provided ineffective assistance by failing to communicate with Howard and adequately investigate the merits of objecting to Paragraph 38. Specifically, Howard testified that he wrote his counsel several letters to which there was no response. R. 95 at 53:15–24 (Remand Hr'g Tr.) (Page ID #490). In those letters and in phone calls from friends and family, Howard requested that counsel object to the court's consideration of any of Howard's juvenile history. *Id.* at 56:6–20 (Page ID #493). These requests also went unanswered. At the sentencing hearing, Howard admits, his counsel did object to several paragraphs in the PSR—though not Paragraph 38. But in his briefing before this court, Howard alleges that his attorney ignored Paragraph 38 because "trial counsel failed to fully investigate" Howard's juvenile history, including the nature of his placement at Glen Mills. Pet'r Br. at 13. Therefore, Howard asserts that counsel's failure to object was due to incompetence and inadequate preparation, not because the objection was frivolous or part of a strategy.

If true, these allegations are deeply troubling. Counsel has an ethical obligation to "keep the client reasonably informed about the status of [his] matter" and "promptly [to] comply with reasonable requests for information." *Model Rules of Prof'l Conduct* R. 1.4(a)(3)–(4). An attorney cannot agree to represent a defendant and then ignore that defendant completely. A defendant has the right to be part of his defense. Likewise, an attorney must "act with reasonable diligence and promptness in representing a client." Rule 1.3. Counsel cannot blunder into court without having performed basic research and preparation. *See. e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 534–35 (2003) (failure to investigate held to be ineffective assistance); *Williams v. Taylor*, 529 U.S. 362, 395 (2000) (failure to investigate and present mitigating evidence at sentencing held to be ineffective assistance); *Carter v. Bell*, 218 F.3d 581, 596 (6th Cir. 2000) ("While we understand the great burdens on appointed trial counsel in capital cases . . . , justice requires that counsel must do more than appear in court . . . ."). That said, we recognize

that counsel cannot be expected to present every argument suggested by a defendant-client, knowing that at least some are futile.

Whether the actions of Howard's counsel qualify as constitutionally deficient representation is not an easy question. We need not answer it now because Howard cannot make his required showing of prejudice. Under *Strickland*, Howard must demonstrate a reasonable probability that, but for his counsel's failure to prepare and to communicate with Howard, the outcome of his sentencing hearing would be different. *See* 466 U.S. at 694. Howard claims that this unprofessional behavior resulted in his attorney not objecting to Paragraph 38 at the sentencing hearing. As discussed above, however, counsel's failure to object to Paragraph 38 does not qualify, in this case, as constitutionally deficient performance. Whether counsel failed to object because he knew an objection would not succeed or he was just lucky makes no difference. Howard offers no other explanation for how his sentencing hearing would have turned out differently if his attorney had properly researched Howard's stay at Glen Mills or communicated with him. Therefore, Howard's second argument fails.

## IV. CONCLUSION

At Howard's sentencing, his counsel failed to object to the awarding of two criminal-history points in Paragraph 38 of the PSR. Dedicated and well-prepared counsel may have lodged concerns with the district court and argued that the facts of this case show that Howard was not sentenced to confinement. But that objection, at least on the record before us today, would have failed. Therefore, counsel—whether prepared or not—did not commit an error that would sustain an ineffective-assistance claim. Accordingly, we **AFFIRM** the district court's denial of Howard's § 2255 petition.